**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| JOHN KETNER,<br><br>*Plaintiff*,<br><br>v.<br><br>CIONI INC. D/B/A MID-USA MOTORCYCLE PARTS,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 4:26-cv-00386-JMD |

**ORDER GRANTING MOTION TO DISMISS**

Artist John Ketner sued motorcycle company Cioni for allegedly using his flaming skull design in Cioni motorcycle parts. Ketner brings federal claims under the Copyright Act and the Lanham Act. But Ketner cannot state a claim under the Copyright Act because he fails to plausibly allege that Cioni had access to his design. And the claim under the Lanham Act fails because the nature of Ketner's claim is governed by copyright law, not the Lanham Act. The Court thus dismisses Ketner's federal claims and declines to exercise supplemental jurisdiction over Ketner's state law claims.

**Background**

As a professional artist, Ketner created several sculptural designs of flaming skulls. He alleges that he possesses an active and valid copyright registration for his work. But he does not allege that he has a registered federal trademark. He alleges that motorcycle parts manufacturer Cioni used a flaming skull design on its products similar to the ones he has sold. He states that Cioni was "copying" his work "without [his] permission." ECF 34 ¶ 24. He says he created the below pictured flaming skull:



ECF 34 ¶ 10.

Ketner alleges that Cioni used the flaming skull pictured below in its products:



ECF 34 ¶ 25.

Ketner describes his flaming skull as "a highly stylized metallic skull rendered with a polished, chrome-like finish" with "flame motifs" that "emerge from the rear of the skull." ECF 34 ¶ 30. He contends that Cioni's products are so similar to his designs that "[o]rdinary observers encountering [the company's] Infringing Products in the marketplace would recognize the appropriation of [his] Flaming Skull Designs, including the distinctive combination, selection, and arrangement of the skull-and-flame features." *Id.* He states that such designs are "associated exclusively with Plaintiff." *Id.* ¶ 22. Ketner also alleges that Cioni "knowingly" appropriated his designs. *Id.* ¶ 24.

Cioni argues that Ketner "alleged no prior relationship between the parties, no communications between them [before a letter about the purported infringement], no advertising or publication of his registered sculptural works in channels that Cioni would have encountered, and no facts suggesting that anyone at [the company] ever viewed, reviewed, or had any contact with [Ketner's] specific registered works before the alleged infringement." ECF 39 at 6; *see id.* (also asserting that Cioni "never" accessed his designs). The company argues that flaming skulls are "ubiquitous in motorcycle culture, and it is unremarkable that both Plaintiff and Defendant offer a 'flaming skull' design to their customers." *Id.* at 1. Finally, Cioni states that the two designs "are clearly not a match." *Id.* at 4. Cioni's skull is wider than Ketner's; its flames are "longer, thinner, layered differently, and less three-dimensional"; its skull is black-and-silver, while Ketner's is polished chrome; and the two skulls differ in eyes, noses, and teeth designs. *Id.* at 8.

Ketner brings several claims against Cioni. He alleges: (1) copyright infringement in violation of the Copyright Act; (2) unfair competition, false designation of origin, and false advertising in violation of the Lanham Act; (3) contributory trademark infringement (in the alternative); (4) common-law unfair competition; (5) common-law unjust enrichment; (6) contributory or vicarious copyright infringement (in the alternative); and (7) conspiracy. Cioni moves to dismiss all counts.

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), Ketner's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (cleaned up). "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (cleaned up).

On a motion to dismiss, the Court accepts all the factual allegations contained in Ketner's complaint as true, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that Ketner is entitled to relief, *see id.* at 555–56; Fed. R. Civ. P. 8(a)(2). "This tenet does not apply, however, to legal conclusions or formulaic recitation of the elements of a cause of action; such allegations may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (cleaned up). The facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## Analysis

The Court first assesses Ketner's claims under the Copyright Act and the Lanham Act and then addresses whether to exercise supplemental jurisdiction over Ketner's remaining state-law claims.

### I.

Ketner first asserts copyright infringement. To establish that kind of claim in the absence of direct evidence of copying, Ketner must plead 1) ownership of the copyright, 2) access by Cioni to the copyrighted material, and 3) substantial similarity between the two works. *Frye v. YMCA Camp Kitaki*, 617 F.3d 1005, 1007–08 (8th Cir. 2010). Ketner fails to plead the second element.

Establishing access requires plausible allegations that Cioni had a "reasonable possibility" to view the copyrighted work. *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d

939, 942 (8th Cir. 1992). Citing a single paragraph in his complaint, Ketner argues that his work enjoys "widespread availability." ECF 44 at 7 (citing ECF 34 ¶ 38). But that allegation is conclusory. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Ketner offers none. Elsewhere, Ketner's complaint says he "spent considerable money and time promoting" his design. ECF 34 ¶ 17. But he does not rely on this allegation in his argument, and it too is insufficient. "[B]are assertions of dissemination do not satisfy the access requirement." *Thimbleberries, Inc. v. C & F Enters., Inc.*, 142 F. Supp. 2d 1132, 1139 (D. Minn. 2001). And all Ketner has offered are bare assertions of dissemination. Nothing in Ketner's complaint provides factual detail sufficient to infer a reasonable possibility that Cioni viewed Ketner's copyrighted work.

Cases that have inferred access based on widespread dissemination have required much more factual detail than Ketner's conclusory allegations. *Compare ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983) (finding widespread dissemination from evidence that the plaintiff's song was the most popular song in the United States and among the top hits in England), *and Cholvin v. B. & F. Music Co.*, 253 F.2d 102, 103–04 (7th Cir. 1958) (finding widespread dissemination from evidence that the plaintiffs sold more than 200,000 records, their song received nationwide airplay "frequently," and the defendant "often" listened to radio broadcasts during the five- or six-year period when the song was "at the height of its popularity"), *with Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1144–45 (9th Cir. 2009) (holding evidence that the plaintiff sold 2,000 T-shirts per year and displayed its design at county fairs where "millions of people attend" and on the internet was insufficient to show widespread dissemination); *and Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (17,000 copies sold was insufficient to show widespread dissemination). "Successful wide dissemination pleadings have thus offered facts suggesting that the alleged

infringer had a realistic likelihood of coming across the allegedly-infringed work" and that the work has had "considerable commercial success." *Larball Publ'g Co., Inc. v. Lipa*, No. 1:22-cv-01872-KPF, 2023 WL 5050951, at **11–12 (S.D.N.Y. Aug. 8, 2023) (cleaned up). Ketner has not pleaded facts from which a court could plausibly infer what other cases have inferred. His copyright claim fails as a matter of law because Ketner has not plausibly pleaded that Cioni had access to his designs.

Ketner cannot evade this deficiency by noting that he sent a cease-and-desist letter to Cioni. ECF 44 at 7 (citing ECF 34 ¶ 38). By its nature, that letter necessarily acknowledges that Cioni was already using the challenged design before receiving the letter, so the letter could not be the source of access to Ketner's design.

Nor can Ketner plead access merely by arguing that his flaming skull and Cioni's flaming skull are "substantially" similar. *Id.* at 7. Ketner appears to confuse the different elements of copyright infringement. Substantial similarity is the standard for the third element. But before getting to that element, a plaintiff must plead the second element: access. When, as here, a plaintiff seeks to establish access indirectly by inference, a plaintiff can do so by pleading similarity. But access may be "inferred" only when there is "*striking* similarity," not "substantial similarity." *Moore*, 972 F.2d at 941 n.1 (cleaned up) (emphasis added); *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) (holding that "a plaintiff must separately plead access" when "alleging substantial similarity" but "not when alleging striking similarity"). A plaintiff who is otherwise unable to plead access can plead a copyright claim by establishing "striking similarity" because that level of similarity "preclude[s] the possibility of independent creation." *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 962 (9th Cir. 2025) (cleaned up).

The standard for striking similarity "is a high bar." *Id.* Striking similarity "preclude[s] any possibility of independent creation." *Moore*, 972 F.2d at 941 n.1. (cleaned up). So the two products must be "nearly identical" before a court will conclude that the similarity is striking. *See, e.g.*, *Designworks Homes, Inc. v. Thomson Sailors Homes, LLC.*, No. 4:18-cv-00189-SRB, 2019 WL 5088764, at *3 (W.D. Mo. Oct. 10, 2019), *aff'd*, 9 F.4th 961 (8th Cir. 2021); *Midway Mfg. Co. v. Dirkschneider*, 543 F. Supp. 466, 482–83 (D. Neb. 1981) (finding striking similarity between video games that were "virtually identical" "in virtually every detail").

Ketner has not plausibly alleged that his skull design and Cioni's are so strikingly similar as to be virtually identical. Indeed, Ketner argues only that the skull designs satisfy a lower standard: substantially similar. ECF 34 ¶ 40. The word "striking" appears nowhere in his complaint or opposition brief. And for good reason. Although the designs share some similarities, they are not virtually identical. As Cioni points out, its designs are "flatter and colored black and silver on the back of a motorcycle side-mirror." ECF 39 at 8. Cioni's "skull depicted is not as three-dimensional and 'sculptural.'" *Id.* Cioni's "skull is wide," while Ketner's "skull is tall." *Id.* Cioni's "flames are longer, thinner, layered differently, and less three-dimensional." *Id.* Cioni's product "has a larger number of flames and the flames have a clean line distinction on the head" whereas Ketner's have "a more gradual blend." *Id.* "The eye socket and nose sockets are a different shape." *Id.* Ketner's "skulls have unique teeth, such as a long vampire-like incisor on one design, that [Cioni's] skulls do not have." *Id.* Cioni's "skull is designed in contrasting black-and-silver," and Ketner's "design is of a heavily polished chrome." *Id.* Ketner offers no specific refutation of any these differences in response. ECF 44 at 4 (acknowledging differences in "flame length, color treatment, [and] skull proportions"). By failing to plead striking similarity or any cognizable alternative theory,

Ketner has failed to plausibly plead sufficient facts for the Court to infer that Cioni had access to Ketner's design.

**II.**

Ketner also attempts to plead trademark claims under the Lanham Act. Cioni moves to dismiss. The Court thus must interpret the trademark protection created by the Lanham Act. That Act protects against false designations as to the "origin . . . of . . . goods." 15 U.S.C. § 1125(a)(1)(A). But that protection applies only to the branding origin of goods, not to the intellectual origin of goods. The Lanham Act applies "only where there is confusion as to the producer of the product sold in the marketplace not the person or entity that originated the ideas or communications that goods or services embody or contain." *Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, 628–29 (D. Md. 2020) (cleaned up). As the Supreme Court held, the language of the Act is "incapable of connoting the person or entity that originated the ideas." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003). Any other interpretation would "cause[] the Lanham Act to conflict with the law of copyright, which addresses that subject specifically." *Id.* at 33.

Ketner's claims under the Lanham Act must be dismissed because they sound in copyright, not trademark. *Brantley*, 463 F. Supp. 3d at 628. Ketner does not allege that he has a trademark registration for his flaming skull. ECF 44 at 11. And he does not allege misappropriation or confusion as to the producer of the product under the Lanham Act. He merely alleges that he is the one who originated the idea behind the product. ECF 34 ¶ 14 ("Plaintiff created these Flaming Skull Designs."). That claim sounds in copyright, not trademark.

Cioni is "indisputably the producer of the tangible goods in question" while Ketner asserts that he "owns the copyright" for the goods. *Atrium Grp. De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 512 (S.D.N.Y. 2008). "Under the *Dastar*

rule, a consumer who purchases" a flaming skull from Cioni under Cioni's labeling is "not falsely informed about the [manufacturing] origin" of the skull because Cioni "did in fact produce" the skull. *Id.* So at most, Ketner would have "a claim for copyright infringement," *id.*, which the Court has already rejected. *See also Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 398 (S.D.N.Y. 2006) ("[T]he fact that copyright law covers communicative products prevents these products from being accorded special treatment under the Lanham Act regardless of whether a viable copyright claim exists in a given case.").

Even if Ketner could somehow sidestep the *Dastar* limitation, he cannot establish another requirement of trademark protection: that his flaming skull has "secondary meaning." ECF 44 at 11 (Ketner acknowledging he must satisfy this requirement). To plausibly plead secondary meaning, Ketner must plead facts allowing a reasonable inference that "through long and exclusive use and advertising" his flaming skull has "become so associated in the public mind" with his services that it "served to identify and distinguish" his services from others. *Co-Rect Prods., Inc. v. Marvy! Advert. Photography, Inc.*, 780 F.2d 1324, 1332 (8th Cir. 1985) (cleaned up). To assess secondary meaning, courts analyze the following factors: "(1) advertising expenditures; (2) consumer surveys linking the mark at issue to the source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Hello I Am Elliot, Inc. v. Sine*, No. 1:19-cv-06905-PAE, 2020 WL 3619505, at *8 (S.D.N.Y. July 2, 2020). "Although secondary meaning presents a fact-intensive inquiry that is often ill-suited for resolution at the motion to dismiss stage," Ketner "has not alleged the minimum facts necessary to support a finding of secondary meaning." *Id.* (cleaned up).

Ketner offers "only conclusory statements" that his flaming skull has secondary meaning. *Walsh Bishop Assocs., Inc. v. O'Brien*, No. 0:11-cv-02673-DSD-AJB, 2012 WL

669069, at *6 (D. Minn. Feb. 28, 2012); ECF 34 ¶ 22. "Such conclusory statements and rote recitations of elements are not sufficient to state a claim based on secondary meaning." *Walsh Bishop Assocs.*, 2012 WL 669069, at *6. "Beyond reciting the elements of the analysis and stating that it has existed for [many] years," Ketner "fails to present facts from which the court could draw an inference" that his flaming skull has "acquired secondary meaning." *Id.* He does not allege "advertisements" that "featured" the flaming skull. *Hello I Am Elliot*, 2020 WL 3619505, at *8. He "does not allege any facts related to consumer surveys or consumer recognition" of his flaming skull. *Id.* at 9. He does not allege any "sales" that "involved efforts" by him "to associate" the flaming skull with him. *Id.* "[T]here is no allegation" that Ketner "has had unsolicited media coverage" of his flaming skull. *Id.* Ketner "alleges no attempts—other than the alleged trademark infringement at issue in this suit—to plagiarize" his flaming skull. *Id.* As a result, Ketner "has not pleaded facts sufficient to infer that [he] has a protectible interest" in his flaming skull, and therefore, "dismissal of the trademark-infringement claim is warranted." *Walsh Bishop Assocs.*, 2012 WL 669069, at *6.

**III.**

Because the Court concludes dismissal of Ketner's federal claims under the Copyright Act and Lanham Act is proper, the Court has discretion whether to exercise supplemental jurisdiction over Ketner's claims under state law. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011); 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). This is because federal courts should "exercise judicial restraint and avoid state law issues whenever possible" and should "provide great deference and comity to state court forums to decide issues involving state law questions." *Condor Corp. v. City of St.*

*Paul*, 912 F.2d 215, 220 (8th Cir. 1990). After consideration of the relevant factors, including "judicial economy, convenience, fairness, and comity," *Carnegie-Mellon*, 484 U.S. at 350 n.7, the Court declines to exercise supplemental jurisdiction over Ketner's remaining state-law claims.

## Conclusion

For the forgoing reasons, the Court therefore **GRANTS** Cioni's motion to dismiss Ketner's claims, ECF 38. Ketner's federal claims under the Copyright Act and Lanham Act are **DISMISSED**, with prejudice. His remaining state law claims are **DISMISSED**, without prejudice.

Dated this 15th day of October, 2026

JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE
FOR THE EASTERN AND WESTERN
DISTRICTS OF MISSOURI